**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | Criminal Action No. 24-196 (BAH) |
| MARVIN BENJAMIN MARTIN, | Judge Beryl A. Howell |
| Defendant. | |

**MEMORANDUM & ORDER**

Defendant, who is facing a jury trial on July 14, 2025, on a charge of attempting to possess with intent to distribute N,N-dimethylpentylone, also known as "Boot," a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846, has moved pre-trial to suppress evidence from a search conducted by the U.S. Customs and Border Protection ("CBP") at the Los Angeles International Airport International Mail Facility of an inbound package shipped from China. *See* Def.'s Mot. to Suppress Evid. ("Def.'s Mot.") at 1, ECF No. 30. The package was addressed to a "Martin Hall" in Washington, D.C. and labeled as having been shipped from a "Linda" in Santa Ana, California. *See* Gov't Opp'n to Def.'s Mot. to Suppress Evid. ("Gov't Opp'n") at 1-2, ECF No. 40. The search revealed that the package contained approximately ten kilograms of Boot. *See* Def.'s Mot. at 2; Statement of Facts, Crim. Compl. at 1, ECF No. 1-1. Defendant retrieved the package after an undercover officer made a controlled delivery to the address on the package in Washington, D.C. *See id.* For the reasons explained below, defendant's motion is DENIED.

I.    **DISCUSSION**

Defendant argues that CBP did not have reasonable suspicion necessary to open and search the package under 19 U.S.C. § 482, and thus the search violated the Fourth Amendment.

1

*See* Def.'s Mot. at 2-3.  Section 482 allows for officers to search any packages for which the officer has "reasonable cause to suspect there is merchandise which was imported contrary to law" or "believe[d] to have been unlawfully introduced into the United States."  19 U.S.C. § 482(a).  The government contends that defendant has no Fourth Amendment standing to challenge this search, considering the package was neither addressed to him nor shipped to a residence associated with him, so he had no expectation of privacy therein.  Gov't Opp'n at 2-3.  The government further argues, in any case, that no reasonable suspicion was required because the search occurred not pursuant to § 482 but rather under a different statutory scheme, 19 U.S.C. § 1582, which authorizes regulations, including 19 C.F.R. § 162.6, for the broad search of persons and baggage entering the United States with no showing of reasonable suspicion required.  *See* Gov't Opp'n at 4-10.  In particular, 19 C.F.R. § 162.6 makes "[a]ll persons, baggage, and merchandise arriving in the Customs territory of the United States from places outside thereof . . . liable to inspection and search by a Customs officer."  *See* Gov't Opp'n at 4-10.

Assuming defendant has standing to pursue the Fourth Amendment challenge—which the Court may do because Fourth Amendment standing is not jurisdictional, *see Rakas v. Illinois*, 439 U.S. 128, 139 (1978)—the government is correct that the search of the package was authorized by § 1582 as a routine border search and such searches do not require a showing of reasonable suspicion under the Fourth Amendment.  Neither party cites D.C. Circuit precedent on point, but other circuit courts have held that CPB may search packages arriving from abroad under § 1582 without articulating a reasonable suspicion.  *See, e.g.*, *United States v. Sutter*, 340 F.3d 1022, 1025-26 (9th Cir. 2003) (holding that a search of defendant's vehicle trunk just inside the border was valid because "routine searches of persons and their effects entering the country

2

may be conducted without any suspicion whatsoever" (quoting *United States v. Molina-Tarazon*, 279 F.3d 709, 712 (9th Cir. 2002)); *United States v. Glasser*, 750 F.2d 1197, 1200-05 (3d Cir. 1984) (holding that a search of a package at a port of entry mailed from abroad was valid under § 1582 because "Customs has the authority to search packages without articulating a 'reasonable cause to suspect,'" and rejecting argument that only § 482 authorized searches of packages from abroad); *United States v. Scheer*, 600 F.2d 5, 7 (3d Cir. 1979) (holding that a search of a suitcase arriving from an international flight was authorized under § 1582 without reasonable cause); *United States v. Pringle*, 576 F.2d 1114, 1116-17 (5th Cir. 1978) (holding that search of package arriving from Thailand at a mail sorting room at a port of entry was valid under § 1582 and the Fourth Amendment).[1]   Indeed, as the Supreme Court has explained, "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border." *United States v. Ramsey*, 431 U.S. 606, 616 (1977) (considering the context of internationally mailed letters).  While more invasive searches might require a greater showing of cause, the straightforward search of items contained in a parcel shipped from abroad falls within searches recognized as routine, *see* Gov't Opp'n at 8-9; *Sutter*, 340 F.3d at 1025-26, and defendant does not argue otherwise.

Defendant does contest, however, that § 1582 rather than § 482 applies here because § 1582 only governs border searches of "arriving baggage or mail," not "baggage or mail or

---

[1]     The D.C. Circuit's view seems likely to be consistent with those circuits.  In one case, in affirming the denial of a motion to suppress evidence from a search and seizure of documents in an international traveler's suitcase at the border, the court impliedly rejected the defendant's argument that only § 482 authorizes customs searches with reasonable suspicion and instead cited to § 1582 and the Supreme Court's language that "searches made at the border . . . are reasonable simply by virtue of the fact that they occur at the border." *See United States v. Gurr*, 471 F.3d 144, 148-50 (D.C. Cir. 2006) (quoting *United States v. Ramsey*, 431 U.S. 606, 616 (1977)) (nonetheless noting that the customs officers in fact had legitimate suspicions about the defendant and that, regardless, any error would have been harmless).

other items which have already 'arrived' but which are suspected of having been imported

contrary to law." Def.'s Reply at 3, ECF No. 43 (quoting *United States v. Taghizadeh*, 41 F.3d

1263, 1266 (9th Cir. 1994) (*en banc*)). The distinction defendant draws is correct—§ 482

authorizes searches of packages "wherever found" with reasonable cause while § 1582 confers

authority for searches only "effectively carried out at the border," *i.e.*, of "incoming international

packages." *Taghizadeh*, 41 F.3d at 1265-66. Yet defendant's argument fails at its application

because the parcel here was, in fact, an "incoming international package[]" searched at the

border. *Id.*

Defendant nonetheless presses the point that the location of the search qualifies only for

application of § 482 because the package was "searched at a warehouse and not specifically at

the point of entry" at an unknown time "after it arrived." Def.'s Reply at 4. A search need not

occur physically at the border, however, to be considered a "border search." "Some searches,

though not *at* the border, occur so spatially and temporally close to it that they are considered

border searches." *Sutter*, 340 F.3d at 1026 (quoting *United States v. Ogbuehi*, 18 F.3d 807, 813

(9th Cir. 1994) (emphasis in original)); *see also United States v. Baxter*, 951 F.3d 128, 133

(3d Cir. 2020) (describing border searches as occurring at "an international boundary 'or its

functional equivalent'" (quoting *United States v. Hyde*, 37 F.3d 116, 120 (3d Cir. 1994))). In

*Sutter*, for instance, the defendant had passed through a first customs inspection area, and the

search occurred "at a secondary inspection area." 340 F.3d at 1026. That secondary area was

considered "both temporally and geographically close enough to the border to be considered a

border search" because it was "part of, not subsequent to, his initial entry into the United States."

*Id.* In the terms of *Taghizadeh*, as quoted by defendant, the defendant in *Sutter* was still

"arriving" when in the secondary inspection place.  Def.'s Reply at 4 (quoting *Taghizadeh*, 41 F.3d at 1266).

Likewise, here, the package was still in the process of entry at the time of the search at the inspection warehouse.  The package had arrived at LAX via commercial air and was offloaded to a specific airport facility for inspection.  Just as in *Sutter*, the package at the secondary inspection area was still "close enough to the border to be considered a border search."  340 F.3d at 1026; *see also Pringle*, 576 F.2d at 1116-18 (considering a search conducted in a mail sorting room at a port of entry to be at a "border area").  Defendant strains to distinguish the instant case by pointing out the obvious, namely: that the search at issue did not involve a "ship [arriving at a] port, a "person arriv[ing] by airplane," or "a bus passenger arriving at a port of entry."  Def.'s Reply at 3.  This argument is just as obvious a straw man tactic that collapses easily since defendant does not and cannot explain why the package should not be considered to have been in an analogous situation—*i.e.*, in the process of arriving into the United States—when at the customs warehouse for inspection here.

Finally, even if § 482 applied here and a showing of reasonable suspicion was required, that standard is met.  The package in question arrived on a shipment from China—a country known for producing illegal precursor chemicals—yet contained a sender address from a "Linda" in Santa Ana, California.  This labeling, alone, would give rise to a reasonable suspicion warranting search.  *See United States v. Safari*, 849 F.2d 891, 894 (4th Cir. 1988) (as cited by defendant, holding that the following facts could give rise to "reasonable cause to suspect" to justify a search: an international parcel that was "heavier than normal letters, and felt as if [it] contained something other than correspondence," "originated from a known source country for drugs, and felt 'powdery' when squeezed").

## II.    CONCLUSION & ORDER

For the reasons explained, it is hereby—

**ORDERED** that defendant's motion to suppress evidence, ECF No. 30, is **DENIED**.

**SO ORDERED.**


Date:  June 27, 2025

                                 _____
                                 **BERYL A. HOWELL**
                                 United States District Judge