**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA,

v.

MARVIN BENJAMIN MARTIN,

Defendant.

Criminal Action No. 24-196 (BAH)

Judge Beryl A. Howell

**MEMORANDUM AND ORDER**

The government has provided notice, pursuant to Federal Rule of Evidence 609, of its intent to impeach defendant Marvin Martin should he choose to testify at his jury trial scheduled for July 14, 2025, on a criminal charge of attempting to possess with intent to distribute N,N-dimethylpentylone, also known as "Boot," a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 846, *see* Indictment, ECF No. 4, with evidence of his prior robbery conviction in 2013.  Gov't Notice of Intention to Admit Evidence of Def.'s Prior Conviction ("Gov't Notice"), ECF No. 41.  Defendant has moved to exclude evidence of this prior conviction under Federal Rule of Evidence 609(b).  *See* Def.'s Mot. in Limine to Prohibit Impeachment with Prior Conviction ("Def.'s Mot."), ECF No. 32.  For the reasons explained below, defendant's motion is granted, and the government is not permitted to impeach defendant with his 2013 conviction.

I.    **FACTUAL BACKGROUND**

In June 2013, defendant was arrested in Prince George's County, Maryland and "charged with armed robbery, robbery, theft, first and second-degree assault, and use of a handgun during the commission of a crime of violence."  *See* Gov't Notice at 2 (citing Upper Marlboro City Criminal Case No. CT131022B).  On November 1, 2013, he "pled guilty to robbery under

Maryland Criminal Code § 3-401." *Id.*[1]  On December 6, 2013, defendant was sentenced to 15 years, with 13 years, five days suspended, and three years' probation.  *See id.*  The government represents that defendant was released from custody on or about July 9, 2014.  *Id.*

Defendant was arrested, on May 24, 2024, in connection with the criminal charge for which he now faces trial.  This charge stems from the following events: A package shipped from China and addressed to a "Martin Hall" in Washington, D.C. was searched by the U.S. Customs and Border Protection ("CBP") at the Los Angeles International Airport International Mail Facility and discovered to contain about ten kilograms of Boot.  Statement of Facts, Crim. Compl. at 1 ECF No. 1-1.  After installation of a tracking device in the package and replacement of the Boot with a sham substance, defendant was surveilled retrieving this package, on March 7, 2024, after an undercover officer made a controlled delivery to the address on the package in Washington, D.C.  *Id.* at 2.  Defendant successfully fled from law enforcement on the day of the controlled delivery and was arrested over two months later.  *Id.*; Arrest Warrant Returned Executed (5/24/2024), ECF No. 7.

## II.    DISCUSSION

Following review of the evidentiary rule invoked by the government to admit defendant's prior conviction, the issue of whether the conditions for admission for impeachment of defendant should he testify at trial is considered and determined not to be satisfied.

### A.    Federal Rule of Evidence 609

Federal Rule of Evidence 609 generally authorizes the admission and use of prior criminal convictions to impeach a witness, subject to certain conditions depending on the type

---

[1]    In contrast to the government's notice and related briefing describing defendant's prior conviction as "robbery," at the pretrial conference held on June 27, 2025, the parties seemed to agree that the specific charge to which defendant pled was actually a conspiracy to commit robbery.  Pretrial Conf. Tr. (June 27, 2025) (Rough) ("PTC Tr. Rough") at 103:10-12, 106:14-15.

and staleness of the prior conviction and when the witness is the defendant in a criminal case.  In particular, felony convictions "must be admitted in a criminal case in which the witness is a defendant, if the probative value of the evidence outweighs its prejudicial effect to the defendant," FED. R. EVID. 609(a)(B), and any conviction "must be admitted if the court can readily determine that establishing the elements of the crime required proving—or the witness's admitting—a dishonest act or false statement," *id.* 609(a)(2).  When, however, "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later[, e]vidence of the conviction is admissible only" when two circumstances are satisfied: (1) "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect; and" (2) the proponent gives an adverse party reasonable written notice of the intent to use it so that the party has a fair opportunity to contest its use."  *Id.* 609(b).

In weighing the probative value and prejudicial effect of past convictions, only the extent to which the conviction is probative of the witness's credibility is relevant to the inquiry.  *See United States v. Lipscomb*, 702 F.2d 1049, 1057 (D.C. Cir. 1983) (*en banc*).  As the Circuit has explained, however, Rule 609 reflects Congress's belief "that all felonies have some probative value on the issue of credibility."  *Id.* at 1062.  Nevertheless, the rule's far more stringent admissibility standard for convictions over ten years-old indicates that a felony's probative value for impeachment purposes diminishes with time, perhaps due to rehabilitation or maturation over time.  *See* 28 WRIGHT & MILLER's FEDERAL PRACTICE & PROCEDURE EVIDENCE § 6136 (2d ed. 2025) ("[T]he passage of a significant period of time raises the possibility that the witness may have been rehabilitated, which would reduce the extent to which past criminal conduct is probative of a present propensity to lie."); *Mills v. Estelle*, 552 F.2d 119, 120 (5th Cir. 1977) ("[T]he ten-year period is evidence that the inference supporting use of prior

3

crime impeachment evidence (a lawbreaker is likely to lie) can no longer be drawn about

a certain person."). "The exclusionary nature of this standard is intended to ensure 'that

convictions over 10 years old will be admitted very rarely and only in exceptional circumstances'

for the purposes of impeaching a witness." *United States v. Thorne*, No. 18-cr-389 (BAH), 2020

WL 122985, at *7 (D.D.C. Jan. 10, 2020) (quoting FED. R. EVID. 609, Advisory Committee

Note, 1974 Enactment, Note to Subdivision (b)).

### B.    Analysis

The government argues that Rule 609(a) applies because defendant's prior conviction

occurred within ten years of his offense conduct in this case (March 7, 2024) and the date of the

indictment (April 23, 2024). *See* Gov't Notice at 5. Recognizing, however, that the case law is

not clear on the proper end date for calculating the ten-year period, the government argues in the

alternative that, under Rule 609(b), the probative value of defendant's prior conviction

substantially outweighs its prejudicial effect. *See id.* at 5, 9. Defendant, on the other hand,

asserts that "[t]here is no probative value to allow the introduction of any convictions" and such

introduction would result in "extreme and irreparable prejudice to the defendant." Def.'s Mot. at

3.

As explained below, Rule 609(b) applies here because more than 10 years have passed

since the date of defendant's release from his prior conviction, on July 9, 2014, until the

scheduled start date of the upcoming trial, on July 14, 2025. The Court concludes that because

the probative value of the prior conviction does not substantially outweigh the prejudice from its

introduction, defendant's motion to prevent the government from using this prior conviction as

impeachment is granted.

1.      *Application of the Ten-Year Period in Rule 609(b)*

The start date of the ten-year period contemplated in Federal Rule of Evidence 609(b) is clearly stated to be the date of "the witness's conviction or release from confinement for it, whichever is later."  As the government points out, however, courts have differed on the appropriate end date, landing variously on the date of the witness's testimony, the first day of trial, the date of the indictment, or some earlier date, such as the date of the charged offense conduct.  *See* Gov't Notice at 4.  For example, the Ninth Circuit has held, at least in one instance, that the ten-year period is calculated backward from the date of the indictment.  *See United States v. Lorenzo*, 43 F.3d 1303, 1308 (9th Cir. 1995).  The Eighth Circuit, historically, considered the date of the offense conduct to be the appropriate end date, at least where the criminal defendant is the witness.  *See United States v. Foley*, 683 F.2d 273, 277-78 & n.5 (8th Cir. 1982).  The majority of circuits to consider the ten-year period end date under Rule 609(b)—indeed the majority of authorities cited by the government, including more recent Eighth Circuit authority—use the start date of the trial (or a potentially later point in time: the date of the witness's testimony).  *See e.g.*, *United States v. Thomas*, 815 F. App'x 671, 677 (3d Cir. 2020) (noting that the court previously assumed the relevant date was that of the start of trial, but not further considering the issue there); *United States v. Stoltz*, 683 F.3d 934, 939 (8th Cir. 2012); *United States v. Nguyen*, 542 F.3d 275, 278 (1st Cir. 2008); *United States v. Thompson*, 806 F.2d 1332, 1339 (7th Cir. 1986); *see also United States v. Peatross*, 377 F. App'x 477, 492 n.3 (6th Cir. 2010) (using the date of the witness's testimony); *United States v. Daniel*, 957 F.2d 162, 168 (5th Cir. 1992) (same).  This Court and at least one other judge in this district, likewise have described the relevant end point at least the scheduled date for trial, *Thorne*, 2020 WL 122985, at *24 n.26 (noting that "the majority rule identifies the end date as,

5

at least, the start of the trial" and concluding that "defendant's trial is set to begin in April 2020, which is more than ten years after his release from custody"), or "the time the witness testifies at trial," *United States v. Pettiford*, 228 F.R.D. 33, 37 (D.D.C. 2006) ("[F]or the purposes of determining whether a conviction is more than ten years old, the question is whether ten years has expired at the time the witness testifies at trial."). *But see United States v. Kelly*, No. 21-cr-59 (RC), 2023 WL 3203089, at *10 (D.D.C. May 2, 2023) (using the date of the arrest as the end date but not discussing the issue).

Using the start date of trial as the relevant date under Rule 609(b) makes sense for the purposes of Rule 609. The rule differentiates between older and more recent convictions for purposes of impeachment, presuming that older convictions have less probative value for assessing a witness's credibility. Under this reasoning, the conviction's probative value matters on the date the witness testifies, rather than dates that may occur far earlier, for example, the date on which the offense conduct began or even when the defendant was indicted since those latter dates could be up to years in advance of the testimony. *See* WRIGHT & MILLER, *supra*, § 6136 ("Since the conviction evidence is offered to impeach, the relevant ten-year period must be that immediately preceding the date the witness's credibility becomes an issue.").

The government cites an important policy argument weighing in the other direction, though: Ending the ten-year period at the time of indictment would prevent delay tactics by the opponent in pre-trial proceedings. *See* Gov't Notice at 4 (citing *United States v. Jefferson*, 925 F.2d 1242, 1256 n.16 (10th Cir. 1991), which noted this argument in a footnote but did not decide the issue); *see also* Bobby Levine, *The Missing Endpoint of Rule 609(b)*, 2024 HARV. J. L. & PUB. POL'Y PER CURIAM 9, 12-16 (2024) (advocating for the date of indictment because "[s]etting the endpoint at the date of indictment carries very minimal risk of gamesmanship").

While such defense gamesmanship may be problematic, the time of the indictment bears little relationship to the purposes of the rule—the probativeness at the time of the testimony—and lacks sufficient support in the caselaw to justify the imposition of that alternative rule here.

Of course, the day the witness testifies often will differ from the start date of the trial, but the latter still works well as a fixed approximation of the former. The start date of trial is usually close enough in time to the date of a particular witness's testimony to minimize any meaningful difference in probative value of the conviction across the two dates. *See* Daniel J. Capra & Jessica Berch, *It's a Code: Amending the Federal Rules of Evidence to Achieve Uniform Results*, 58 WAKE FOREST L. REV. 549, 561-63 (2023) (agreeing that "[t]his solution is appealing, in part, because the date is easy to ascertain and the trial is the point in time when the factfinder begins to assess credibility of witnesses," though ultimately advocating for an endpoint of "the day the particular witness *begins testifying*" as a more nuanced approach (emphasis in original)). Moreover, practical reasons favor using the start of the trial rather than the date of a particular witness's testimony as the end date for purposes of application of Rule 609(b). The scheduled date for beginning the trial is a fixed date that facilitates pre-trial resolution of a Rule 609 motion under the appropriate standard in cases where the ten-year end date may be getting close. Using this fixed start date of trial also avoids delay tactics by the parties in the course of trial since when a particular witness testifies varies based on factors both within and outside of the parties' control once the trial has begun.

Rule 609(b) therefore applies to defendant's prior conviction. Defendant was released from custody for that conviction in July 2014, which is greater than 10 years before July 14, 2025, the date his trial is scheduled to begin. For the government to impeach defendant with that

conviction, then, it must demonstrate that its probative value substantially outweighs its prejudicial effect.

   2. ***Balancing of Prejudicial Effect and Probative Value under Rule 609(b)***

   Several factors have been identified as relevant to determining the balance between the probative value and the prejudicial effect: "(1) the kind of crime involved; (2) when the conviction occurred; (3) the importance of the witness' testimony to the case; (4) the importance of the credibility of the defendant; and (5) generally, the impeachment value of the prior crime." *United States v. Anderson*, 174 F. Supp 3d 104, 106 (D.D.C. 2016) (quoting *United States v. Knight*, No. 07-cr-81, 2007 WL 1760939, at *3 (D.D.C. June 18, 2007)); *see also United States v. Jackson*, 627 F.2d 1198, 1209 (D.C. Cir. 1980) ("Among the factors pertinent to an inquiry into whether the probative value of the prior conviction outweighs its prejudicial effects are the nature of the crime, the time of conviction, the similarity of the past crime to the charged crime, the importance of the defendant's testimony, and the degree to which the defendant's credibility is central to the case."). Those factors are not "exhaustive of the possible considerations in determining the admissibility of the evidence." *United States v. Appiah*, No. 19-cr-361 (BAH), 2020 WL 3469688, at *7, 10-12 (D.D.C. June 25, 2020).

   The government argues that the probative value of the conviction is "extremely high," given that such an offense is "evidence of a conscious disrespect for the law" and if defendant testifies, "his credibility concerning his involvement in the charged offense," particularly "his decision to accept receipt of the package in question and the motivations behind his subsequent actions in fleeing law enforcement," "will be a central issue in this case." Gov't Notice at 5-6. With respect to prejudice, the government points out that the conviction is just outside of the 10-year window and thus is not particularly stale, and the prior conviction will not be confused with

this one given that that conviction was "for robbery, not drug trafficking." *Id.* at 7. Further, the government described its plan to use the prior conviction by simply asking defendant, should he choose to testify at trial, "did [you] commit conspiracy to commit robbery in 2014?" without exploring other details of his offense conduct underlying that conviction. PTC Tr. Rough at 106:10-17. Defendant counters that the conviction will serve no probative value and merely "agitate, in a detrimental way, the jury's credibility assessment of [defendant] for truthfulness" and "impermissibly inflame the passions of the jury." Def.'s Mot. at 3.

Considering each of the guiding factors, the probative value of the prior conviction does not substantially outweigh the prejudice. Regarding the nature of the crime (the first factor under *Anderson*, 174 F. Supp. 3d at 106) and its probative value, robbery is a "serious crime and thus reflects more strongly on his credibility than a mere 'crime of impulse.'" *Thorne*, 2020 WL 122985 at *24 (quoting *Lipscomb*, 702 F.2d at 1062). Robbery "involve[s] theft and is a serious crime that shows conscious disregard for the rights of others." *Lipscomb*, 702 F.2d at 1070-71. At the same time, however, the prior crime of robbery is not especially probative of truthfulness compared to "crimes that involve deception or stealth." *Id.*; *United States v. Wilkins*, 538 F. Supp. 3d 49, 85 (D.D.C. 2021) ("[C]ertain types of felony offenses, that do not involve any false statement by the perpetrator, have been found to not be particularly probative of a witness's credibility."); *Anderson*, 174 F. Supp. 3d at 106 (describing the fifth factor as the "impeachment value of the prior crime"). The nature of the crime therefore provides some, though not a great deal of, probative value.

As to its prejudicial effect, the fact that the nature of the prior crime is significantly different from the instant offense—a robbery versus drug trafficking—helps to limit prejudice because the jury will be unlikely to confuse the two and consider the prior robbery conspiracy

conviction as propensity evidence.  *See Lipscomb*, 702 F.2d at 1071 ("[P]rejudice was not especially great because the previous crime was not similar to the present one."); *Appiah*, 2020 WL 3469688, at *11 ([C]ourts have been particularly concerned with the prejudicial effect of admitting convictions that are similar or identical to the offenses underlying the charges in the instant case for fear of inviting the jury to think 'if he did it before he probably did so this time.'" (quoting *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967))).  Nonetheless, because robbery may be viewed as criminal conduct more directly targeted at identifiable victims and their property, this criminal conduct may raise more serious concern about dangerousness or even elicit more moral outrage than the charged drug trafficking offense.  In this way, connecting the defendant to a robbery could improperly taint the jury's view of the defendant, leading them to believe he is a "bad person" and convict on that basis.  *See* PTC Tr. Rough at 105:19-106:4 (defense counsel explaining that while the jury may see drug trafficking as "more of a neutral crime," hearing the word robbery may "cause them to think that he is a bad person").

As to the importance of defendant's testimony (the third factor), his testimony "could play a significant role in the jury's verdict," *Thorne*, 2020 WL 122985, at * 24 (quoting *United States v. Moore*, 75 F. Supp. 3d 444, 455 (D.D.C. 2014)), considering that the defendant alone can represent what he believed was contained in the package he retrieved and thus help prove or disprove the *mens rea* of the charged attempted drug trafficking offense.  Accordingly, the defendant's credibility may be important to the jury (the fourth factor), and the robbery conviction could aid this assessment.  The risk that the jury may wrongly infer the defendant's guilt from a witness's past criminal acts, however, is heightened when the defendant is the very witness testifying.  *See Wilkins*, 538 F. Supp. 3d at 85; *cf. Lipscomb*, 702 F.2d at 1063 ("There is less risk of prejudice when a defense witness other than the defendant is impeached through a

prior conviction because the jury cannot directly infer the defendant's guilt from someone else's criminal record.").

Finally, as to the time of the conviction (the second factor), the robbery occurred 11 years ago, when defendant was only 22 years old. The government argues that this weighs in favor of inclusion because the conviction is not "stale" and his intervening arrests in 2014, 2018, and 2019 demonstrate that he was not "reformed." Gov't Notice at 8. To the contrary, while eleven years is not long relative to the ten-year mark requiring analysis under Rule 609(b), it is one third of this defendant's whole life. *See Pettiford*, 238 F.R.D. at 43 (noting that the defendant was "significantly younger at the time" of the prior conviction and had been influenced by peers at that time). As a result, the conviction's limited ability to reflect on defendant's current character weighs against its inclusion.

On balance, defendant's prior conviction offers limited probative value for impeachment purposes—only that inherent to all prior felony convictions, which is further diminished by defendant's age at the time of the prior conviction and its staleness. While no particular extreme prejudice is likely to result, defendant still would likely face significant prejudice from the jury hearing about his involvement in a serious, dangerous crime like a robbery conspiracy. The limited probative value is not enough to *substantially* overcome that prejudice, as required under Rule 609(b). Further, because evidence of the conviction will not otherwise be introduced by the government for another purpose in its case-in-chief, under Federal Rule of Evidence 404(b), Gov't Notice at 1, this situation differs from others, such as one cited by the government, where this Court determined the additional prejudicial effect of reintroducing a conviction for the purpose of impeachment to be minimal. *See Thorne*, 2020 WL 122985, at *25 (where evidence of greater than ten-year-old prior narcotics conviction was admissible under Rule 404(b) in a

case involving narcotics and firearms charges, the Court determined that "'[t]he potential prejudice that comes from admitting these same-crime prior convictions is minimal when the jury has already been exposed to those prior convictions for some other purpose,' as the jury will be here" (quoting *Moore*, 75 F. Supp. 3d at 456)); *see also Appiah*, 2020 WL 3469688, at *11 ("Courts have typically held that when a jury is already privy to a defendant's prior conviction owing to its introduction in the government's case, the later repetition of that evidence for impeachment purposes poses only a 'negligible' risk," and collecting cases).

If Rule 609(b) only required that the probative value slightly outweigh the prejudicial effect, the outcome might be different. Yet, Rule 609(b) establishes a "presumption against admissibility," *Pettiford*, 238 F.R.D. at 40 (quoting *United States v. Cathey*, 591 F.2d 268, 275 (5th Cir. 1979)) , and "other than to suggest that all convictions are relevant to credibility, . . . the [g]overnment has done little to show that the specific circumstances of [d]efendant's [prior] conviction carry with them probative value in this case or excuse the remoteness of the conviction," *id.* at 43. The government has thus "failed to meet its burden to establish that the probative value of" the robbery conviction "substantially outweighs" its prejudicial effect. *Id.*

## III.    CONCLUSION AND ORDER

For the reasons explained, it is hereby—

**ORDERED** that defendant's motion to prohibit impeachment with the prior conviction, ECF No. 32, is **GRANTED**.

**SO ORDERED.**

Date:  June 30, 2025

_____
**BERYL A. HOWELL**
United States District Judge