**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

v.

MARVIN BENJAMIN MARTIN,

Defendant.

Criminal Action No. 24-196

Judge Beryl A. Howell

<u>**MEMORANDUM OPINION AND ORDER**</u>

Defendant Marvin Martin faces a jury trial on July 14, 2025, for attempted possession with intent to distribute a mixture and substance containing a detectable amount of n,n-dimethylpentylone (commonly referred to as "boot"), a Schedule I controlled substance, in violation of 21 U.S.C. §§ 841 (a)(1), (b)(1)(C), and 846.  Indictment, ECF No. 4; Min. Order (Dec. 30, 2024).  The government has moved pre-trial for admission in its case-in-chief, as either intrinsic to the charged offense or as other bad acts, pursuant to Federal Rules of Evidence 403 and 404(b), two categories of evidence.  The first category of proffered evidence consists of law enforcement agent testimony, photographs, three recorded jail calls between defendant and inmates in Bureau of Prisons ("BOP") facilities, and two of defendant's text message chains showing, in the government's view, that, on March 7, 2024, defendant fled from law enforcement on three separate occasions after he retrieved a package shipped from China at an address not associated with him in Washington, D.C.  *See* Gov't Consol. Mot. to Intro. Intrinsic Evid. or Alternatively to Intro. Other Crimes Evid. Pursuant to Fed. R. Evid. 404(b) ("Gov't Consol. Mot.") at 1, 19-23, ECF No. 62; Gov't Reply Supp. Gov't Consol. Mot. ("Gov't Reply") at 1, 11 n.6, ECF No. 67; Gov't Mot. to Intro. Intrinsic Evid. or Alternatively to Intro. Other Crimes Evid. Pursuant to Fed. R. Evid. 404(b) ("Gov't 404(b) Mot.") at 4-8, ECF No.

27.  This package originally contained about ten kilograms of boot but for purposes of the controlled delivery law enforcement replaced the boot with a "sham" substance.  Gov't's Consol. Mot. at 2.  The government contends that, even if not deemed "intrinsic," this evidence of defendant's efforts to avoid law enforcement after retrieving the package shows "his determination to evade arrest because he had drugs on him" and thereby "shows knowledge and consciousness of guilt."  Gov't's Reply at 1.

The second category of proffered evidence consists of: (1) defendant's text messages spanning the three-and-a-half-month period between January 2024 and the date of his arrest, on April 10, 2024, which messages were extracted from three phones recovered at defendant's residence, and is a shorter period than the nearly nine-month period "between August 1, 2023, and April 10, 2024," of text messages the government originally sought to introduce, *see* Gov't's Consol. Mot. at 1, but modified in reply, *see* Gov't's Reply at 11; (2) three recorded jail calls on March 13, 2024, March 14, 2024, and April 3, 2024, reflecting defendant's communications regarding "selling, advertising, and/or possessing boot"; and (3) a digital scale with boot residue recovered at the time of his arrest from defendant's vehicle.  Gov't's Consol Mot. at 1, 12-16; Gov't's Reply at 10-12; Gov't's Suppl. to Mot. to Intro. Evid. Pursuant to Fed. R. Evid.  404(b) ("Gov't's Suppl. 404(b) Mot.") at 1-2, ECF No. 36.[1]  The government contends that this

---

[1]      The government's briefing in support of its effort to admit text messages, under Rule 404(b), has been a particularly murky mess to sort and analyze.  For example, the government attached a compilation of text messages spanning 69 pages as an exhibit to its consolidated motion but without identifying the specific discrete messages or message chains for which introduction is sought, let alone providing on this compilation or in associated briefing any corresponding government exhibit number from its exhibit list.  *See* Gov't's Consol. Mot., Ex. A, Compilation of Messages at 21, ECF No. 62-1.  Further complicating review and analysis of the government's motion is that some of the messages contained in the compilation attached to the government's consolidated motion are not discernible as appearing on the government's exhibit list—and vice versa. *Compare* Gov't's Exhibit List at H3.15, ECF No. 65 ("Dayday – brown sh*t, sample, took a big hit"), *with* Compilation of Messages (nowhere showing a message from "Dayday").  The government's exhibit list provides such a brief "description," without details such as the date, time, phone number of the message recipient or sender, *see* Gov't's Exhibit List at 11-16, that ensuring proper matching between the Compilation of Messages and the exhibit list is virtually impossible.  This presentation was so murky, in fact, that the government's consolidated motion, though describing examples of text messages for which it seeks admission, never actually cites to the Compilation of Messages submitted with the same motion—

evidence of "boot distribution and possession immediately before and after the charged offense is probative of defendant's intent to distribute."  Gov't's Reply at 1.

After hearing oral argument at the pretrial conference on the government's initial motions, *see* Gov't's 404(b) Mot.; Gov't's Suppl. 404(b) Mot., and considering the parties' supplemental briefing to address shortcomings in the government's original motions, *see* Min. Order (June 20, 2025) (ordering government to show cause why defendant's opposition arguments to 404(b) evidence should not be deemed conceded given government's "failure to file any timely reply"); Min. Order (June 27, 2025) (scheduling supplemental briefing regarding 404(b) evidence), the evidentiary issues raised by both categories of evidence the government seeks to admit in its case-in-chief are now ripe for resolution.  For the reasons stated below, the government's proffered evidence, to the extent identifiable as explained herein, *see supra* n.1, may be admitted, pursuant to Federal Rule of Evidence 404(b).

## I.    BACKGROUND

The government's proffered facts underlying defendant's charged attempted drug possession with intent to distribute is reviewed below.

### A.    Government's Proffered Factual Background

On February 11, 2024, United States Custom and Border Protection officers assigned to the international mail facility at Los Angeles International Airport inspected an inbound package shipped from China to "Martin HALL" at the address 66 58th St. SE, Washington, D.C., and found 10 kilograms of narcotics that field tested positive for boot.  Gov't's Consol. Mot. at 2; *see also* Gov't's Mem. Supp. Pre-Trial Detention ("Gov't's Detention Mem.") at 3, ECF No. 11.  On

---

even with a simple page citation where the referenced example could be found—nor to either the government's exhibit list or its Notice of Phone Exhibits and Recorded Calls with Proposed Transcripts ("Notice"), *see* Notice, ECF No. 60.

March 7, 2024, the Homeland Security Investigations ("HSI") Washington D.C. High Intensity Drug Traffic Area Group, the Washington D.C. Metropolitan Police Department, and other supporting law enforcement officers conducted a controlled delivery of the package to the recipient address.  Gov't's Consol. Mot. at 2; *see also* Criminal Compl., Statement of Facts ("SOF") at 2, ECF No. 1-1.  Before the delivery, the officers replaced the narcotics inside the package with an inert substance, referred to as "sham," which was packaged in a similar fashion as the original narcotics, and placed a concealed GPS tracker inside of the box.  Gov't's Consol. Mot. at 2; *see also* SOF at 2.  An undercover officer delivered the package to the front steps of the listed address around 11:25 a.m.  Gov't's Consol. Mot. at 2.  At 11:27 a.m., law enforcement officers observed defendant arrive at the address in a Toyota Camry, retrieve the package, and enter his vehicle with the package in hand.  *Id.*

The vehicle remained parked for approximately ten minutes and, at around 11:41 a.m., defendant drove to a Shell gas station at 5010 Benning Rd SE, Washington, D.C., where an unidentified male entered the passenger side of defendant's vehicle at around 11:44 a.m. and exited four minutes later.  *Id.*; Gov't's Detention Mem. at 4.  After the unidentified male exited the car, defendant immediately departed the area, with officers continuing surveillance of defendant between 11:48 a.m. and 12:37 p.m.  Gov't's Consol. Mot. at 2-3.

During this surveillance, officers observed defendant exit his vehicle again at approximately 12:15 p.m. and enter a Dollar Plus Food Store located at 5575 Central Ave SE, Washington, D.C.  *Id.* at 3.  Defendant was then observed driving at a high rate of speed, stopping and parking at various locations, and driving through residential neighborhoods and side streets.  *Id.*  At around 12:30 p.m., officers realized, by monitoring location data from the GPS tracker, that the package had stopped moving though defendant continued to drive

throughout the area, indicating that defendant had discarded the package. *Id.* After this realization, officers located the tracker in a trash bin, along with the opened cardboard package but no sham. *Id.*

### B.    Ensuing Evasion of Law Enforcement

At approximately 12:37 p.m., law enforcement officers in an unmarked police vehicle encountered defendant driving his Toyota Camry in the vicinity of the discarded tracker. *Id.* These officers activated the emergency police lights in their vehicle in an attempt to detain defendant. *Id.* at 4. Defendant, who was driving towards the officers' vehicle, stopped, reversed his vehicle, and then drove forward at a high rate of speed around the law enforcement vehicle, crashing into a minivan and nearby fence "while fleeing the area." *Id.* at 4.

Officers then regrouped and identified several addresses affiliated with defendant. *Id.* At around 1:28 p.m., law enforcement officers saw defendant's Toyota Camry parked at 9111 Wallace Rd., Lanham, MD—defendant's address of record and the registration address for the car. *Id.* at 5. Twelve minutes later, as additional officers arrived in the area, defendant departed the address in the Toyota Camry. *Id.* An officer driving an unmarked law enforcement vehicle activated his emergency vehicle lights and maneuvered this vehicle in an effort to block the defendant in the Camry. *Id.* Defendant accelerated his vehicle towards the agent, striking the front side of the agent's vehicle while fleeing the area at a high rate of speed. *Id.*

Law enforcement officers attempted a third time to stop defendant less than an hour later on the same day. *Id.* at 6. At approximately 2:15 p.m., as additional officers arrived to set up a perimeter around the Lanham address in anticipation of obtaining a search warrant, officers observed defendant on foot moving from the rear of the house towards a Mercedes parked in the driveway. *Id.* Agents observed defendant enter the Mercedes and maneuvered their vehicles to

block the street.  *Id.*  Defendant drove towards the blockade at a high rate of speed, swerved off the roadway onto the sidewalk, hitting a tree and bypassing the officers' vehicles, again successfully fleeing the area.  *Id.*  During this flight, at least one law enforcement officer stood outside his unmarked vehicle with his tactical vest marked "POLICE" commanding defendant to stop.  *Id.*

### C.    Post-Evasion Jail Phone Calls, Arrest, and Results of Relevant Searches

Following his successful flights from law enforcement on March 7, 2024, investigators identified defendant's phone numbers and obtained consensually recorded calls from BOP inmates to his numbers.  *Id.* at 7-8; SOF at 2-5.  The government describes three of these calls as confirming defendant's acute awareness that he was fleeing from law enforcement on the date of the controlled delivery of the package.  Gov't's Consol. Mot. at 7-9. [2]  In his own words, he "dodged a bullet."  *Id*. at 9.  For example, on March 7, 2024, the same day as the controlled delivery, defendant told BOP inmate "KW," that he had "to get my car fixed," because "[t]hey tried to box me in."  *Id*. at 7.  Though defendant said, "I ain't trying to talk about that shit over the phone," he did say "it's just . . . the midst of what I was doing at the time.  I just need to get rid of this car now," and get a "new phone number."  *Id.* at 7-8.  He also told "KW" that he had to "[m]ake sure I ain't got no damn warrant . . . I'm trying to figure out whether they got beef with me or they was just looking for somebody."  *Id*. at 8.  Almost a month later, on April 3, 2024, defendant spoke with BOP inmate "JW," stating, "I told you I had a little encounter," "[t]hey tried to bee sting me," and "tried to box me in," referring to "the alphabet, not 12, but the

---

[2]       While not identified by exhibit numbers in briefing, the three calls described as occurring on March 7 and April 3, 2024, *see* Gov't's Consol. Mot. at 7-9, appear to be the recorded BOP inmate calls listed as D5 (Mar. 7, 2024), D9 (Apr. 3, 2024), and D10 (Apr. 3, 2024) on the government's exhibit list.  Gov't's Exhibit List, ECF No. 65.

alphabet," though "I ain't want to say too much over the phone" and "I ain't got no warrant or no shit like that." *Id.* at 8-9. The same day, on April 3, 2024, defendant told another BOP inmate, "WG," he "had a little situation going on" where "[s]ome people was trying to get me and . . . did a little sting, but I [unintelligible] like dodged a bullet." *Id.* at 9.

In addition to the three recorded BOP inmate phone calls on March 7 and April 3, 2024, referencing the damage to his car from "alphabet" officers "box[ing] [him] in" and a "sting," three additional recorded calls described by the government, in its view, reveal evidence of defendant's possession and sale of boot prior to his arrest on April 10, 2024.[3] For example, on March 13, 2024, defendant again spoke with "KW" to say he "gotta come up with a lawyer . . . a federal lawyer," and was "probably 50 bands in the hole," meaning $50,000, and "[h]e said he wants 20 bands," meaning $20,000. *Id.* at 12-13; *see also* SOF at 3 (explaining "bands" is "a slang term for money" and is "most commonly referred to a quantity of $1,000.00."). Defendant also mentioned he was "outta like 40 I already made like 3, only have like 37 to go." *Id.* On March 14, 2024, defendant again spoke with "KW" to say he was headed to Maryland "to just make some money" because he got "hit for 40," which the government construes to mean that defendant was "going to Baltimore to make up for the lost $40,000 after receiving fake drugs." Gov't's Consol. Mot. at 13-14. Finally, on April 3, 2024, during the same phone call with "JW," where defendant referred to "a little encounter" where "they tried to bee sting me . . . [by] the

---

[3] The government refers to the "text messages" but, confusingly, not to recorded BOP calls as evidence of defendant's other bad acts of "selling, advertising, and/or possessing boot," Gov't's Consol. Mot. at 1, in describing this category of evidence. Yet, in the section of the government's consolidated motion titled "Evidence of Defendant's Possession and Sale of Boot," three jail calls reflected on the government's exhibit list as D6 (Mar. 13, 2024), D7 (Mar. 14, 2024), and D8 (Mar. 14, 2024), are discussed. *See* Gov't's Exhibit List, ECF No. 65. The Court assumes, despite the lack of precision in some parts of the government's briefing, that the government is seeking to introduce, in addition to text messages, these three recorded BOP calls for non-propensity purposes under Rule 404(b), namely to demonstrate defendant's "possession, possession with intent to distribute, and distribution of boot prior to the controlled delivery (and charged offense) and after the date of the charged offense [in order to] show[] his knowledge of the substance he was attempting to possess on the date of the controlled delivery and his intent to then distribute that substance." Gov't's Consol. Mot. at 23.

alphabet . . . tried to box me in, some other shit," discussed receiving "fake shit" and needing to make up "$20,000" that he owed.  *Id.* at 14-15.

Defendant was arrested on April 10, 2024, at his residence in Annapolis, Maryland. Gov't Consol. Mot. at 9.  During execution of court authorized search warrants of defendant's residence and 2023 Mercedes sedan, the same car in which defendant escaped during his third flight on March 7, 2024, law enforcement seized, from the car, a digital scale with a white powdery residue, which tested presumptively positive for cocaine and boot, *id.* at 16, and from the residence, three cell phones used by defendant, *id.* at 11-16.  According to the government, the search of the cell phones revealed numerous text messages, in which defendant referenced his evasion from law enforcement on March 7, 2024, and discussed distributing and selling boot prior to and after the March 7, 2024, controlled delivery of the package.  *Id.*[4]

---

[4]    The government's exhibit list appears to include forty-eight separate exhibits of text messages (or chains). *See* Gov't's Exhibit List.  Certain of these government exhibit list entries for text messages appear to be used only to identify defendant as the user of the phone from which the text messages were extracted. *See, e.g*, Gov't's Exhibit List at H1.2-H1.4 (three entries for "orange phone"); Compilation of Messages at 2-3; Gov't's Exhibit List at H2.2-2.3 (two entries for "green phone"); Compilation of Messages at 6; *see also* Compilation of Messages at 50 (message related to "red phone" but no discernible corresponding exhibit list entry).  The government's exhibit list also has three entries described as "evidence of source details" regarding device information.  *See* Gov't's Exhibit List at H1.1, H2.1, H3.1; Compilation of Messages at 1, 5, 49.  To the extent these government exhibits are intended merely to show defendant's use of the three cell phones, no analysis under Rule 404(b) has been provided by the government nor may be necessary.  Similarly, the government's exhibit list has entries for three text messages (or chains) that do not appear to have been provided in either its Notice or Compilation of Messages, *see* Gov't's Exhibit List H1.6, H3.2, H3.15, as well as two entries for text messages (or chains) that appear to predate January 1, 2024, *id*. at H2.9, H2.10; Compilation of Messages at 12-15, and presumably the government is not, or no longer, seeking to admit these text messages. As such, H1.2, H1.3, H1.4, H1.6, H2.2, H2.3, H2.9, H2.10, H3.2, and H3.15 are not considered here.

In contrast, out of the remaining exhibit list entries for text messages, eleven exhibits appear to be messages (or chains) that predate the controlled delivery but occurred after January 1, 2024, Gov't's Exhibit List at H2.4-H2.7, H2.12-2.20; Compilation of Messages at 7-10, 20-31; two exhibits appear to be messages (or chains) spanning dates both shortly prior to and after the controlled delivery, *see* Gov't's Exhibit List at H2.21, H2.23; Compilation of Messages at 32, 34-35, 42-47; and eighteen exhibits appear to be messages (or chains) that postdate the controlled delivery, *see* Gov't's Exhibit List at H1.5, H1.7, H2.8, H2.11, H2.22, H2.24 H3.3-H3.14, H3.16-H3.17; Compilation of Messages at 4, 11, 16-19, 36, 51-69, and Gov't's Consol. Mot. at 10-11.  These thirty-eight text messages (or chains) are the subject of the instant Rule 404(b) analysis.  Given the murky mess of the government's briefing, *see supra* n.1, this is the best identification of the text message evidence at issue that the Court has been able to glean from the combination of the government's exhibit list, Compilation of Messages, and briefing.

For example, with respect to his alleged flights from law enforcement, on March 8, 2024, defendant sent a text message to an individual stating that "I'm n a lil bit of trouble" and "need a lawyer by the time they catch up wit me," Gov't Consol. Mot. at 10, and on March 10, 2024, he texted to a different person that he was "blitz[ed]" three times in one day, *id.* at 10-11.[5]

With respect to his alleged boot distribution activities, in January 2024, defendant, for example, advertised "white boot" for $175 "a zip" and "brown boot" for $125 "a zip" to one person.  *Id.* at 25; Gov't Consol. Mot., Ex. A, Compilation of Messages at 21, ECF No. 62-1.[6] He also continued to advertise boot for sale after the March 7, 2024, controlled delivery, including, for example, only a week later, when, on March 14, 2024, he sent texts to multiple people stating he had a new phone number and boot to sell.  *See* Gov't Consol. Mot. at 25; Compilation of Messages at 60-69.[7]

## II.    DISCUSSION

As already noted, the government seeks to introduce evidence, in the form of witness testimony, photographs, recorded jail calls, and text messages, of defendant's efforts to avoid law enforcement as either intrinsic to the charged offense or, alternatively, admissible, pursuant to Federal Rules of Evidence 404(b) and 403.  Gov't Consol. Mot. at 1, 19-23.  Similarly, the government seeks to admit, pursuant to Rules 404(b) and 403, defendant's communications, including text messages between January 1, 2024, and April 10, 2024, and the digital scale

---

[5]    While not identified in briefing by exhibit numbers, the two text messages described as occurring on March 8 and March 10, 2024, *see* Gov't Consol. Mot. at 9-10, appear to be the text messages listed as H2.24 ("Andrew – need a federal lawyer (2 pages)") and H1.7 ("Blitz 3 times"), *see* Gov't Exhibit List.

[6]    While not identified in briefing by exhibit number, the text message that described advertising "white boot" for $175 "a zip" and "brown boot" for $125 "a zip" appears to be the text message listed as H2.13.  *See* Gov't Exhibit List at 14.

[7]    While not identified in briefing by exhibit number, the text messages in which defendant states that he had a new number and had boot to sell appear to be the text messages listed as H3.6-H3.14 and H3.16-H3.17. *See* Gov't Exhibit List at H3.6-H3.14, H3.16-17.

recovered from defendant's Mercedes sedan on April 10, 2024, reflecting the defendant's sale, advertisement, and/or possession of boot. *Id.* at 1; Gov't's Reply at 10-12. Defendant argues that his flight from law enforcement is extrinsic to the charged offense, and that all the proffered evidence runs afoul of Rule 404(b)'s ban on propensity evidence and should be excluded as unduly prejudicial under Rule 403. Def.'s Opp'n to Gov't's 404(b) Mot. ("Def.'s Opp'n") at 3-10, ECF No. 39; Def.'s Opp'n to Gov't's Consol. Mot. ("Def.'s 2d Opp'n") at 1-13, ECF No. 66. After a review of the applicable evidentiary rules, the parties' arguments are addressed *seriatim*.

### A.    Federal Rules of Evidence 404(b) and 403

Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." FED. R. EVID. 404(b). The rule reflects the axiomatic principle that "a defendant must be tried for what he did, not for who he is." *United States v. Linares*, 367 F.3d 941, 945 (D.C. Cir. 2004) (quoting *United States v. Daniels*, 770 F.2d 1111, 1116 (D.C. Cir. 1985)). "[B]y definition," the Rule encompasses "other crimes, wrongs, or acts," while "evidence that constitutes the very crime being prosecuted' . . . is not barred by Rule 404(b) because it is not evidence of 'any *other* crime.'" *United States v. Abou-Khatwa*, 40 F.4th 666, 677-78 (D.C. Cir. 2022) (alteration accepted) (emphasis in original) (first quoting *United States v. Bowie*, 232 F.3d 923, 927 (D.C. Cir. 2000), and then FED. R. EVID. 404(b)(1)).

Thus, the threshold analysis in a Rule 404(b) inquiry is to determine whether the "acts [are] 'extrinsic' to the crime charged" and thus "subject to Rule 404(b)'s limitations," or, instead are "'intrinsic' to the crime" and not covered by Rule 404(b)'s ban on propensity evidence. *Id.* at 677 (quoting *United States v. McGill*, 8815 F.3d 846, 879 (D.C. Cir. 2016) (per curiam)) (brackets omitted). An act is intrinsic if it "(a) is part of the charged offense; (b) is offered as

direct evidence of the charged crime; or (c) was performed contemporaneously with the charged crime and facilitated" it.  *United States v. Roberson*, 581 F. Supp. 3d 65, 72 (D.D.C. 2022); *see also Abou-Khatwa*, 40 F.4th at 677.  At the same time, however, the D.C. Circuit has cautioned that intrinsic evidence does not encompass a set of acts merely necessary to "complete the story" or "explain the circumstances" surrounding the crime, *Bowie*, 232 F.3d at 929, which somewhat vague instruction makes the line-drawing between intrinsic and extrinsic evidence more challenging.

Evidence of any other crime, wrong, or act, which is subject to Rule 404(b), is extrinsic evidence that may not be used to prove the defendant's bad character or criminal propensity. *McGill*, 815 F.3d at 879.  "Although stated as a restriction, the Rule is actually one of 'inclusion rather than exclusion.'"  *United States v. Cassell*, 292 F.3d 788, 792 (D.C. Cir. 2002) (quoting *Bowie*, 232 F.3d at 929).  "[E]vidence of a defendant's prior bad acts *is* admissible for purposes *unrelated* to the defendant's character or propensity to commit a crime, such as 'proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id.* (quoting FED. R. EVID. 404(b)(2)) (emphasis in original); *see also United States v. Calloway*, No. 22-3043, 2023 WL 3743890, at *5 (D.C. Cir. June 1, 2023) ("The Rule excludes evidence of the defendant's past bad acts only if the evidence is offered to show the defendant's bad character.").  In other words, "under Rule 404(b), *any* purpose for which bad-acts evidence is introduced is a proper purpose so long as the evidence is not offered *solely* to prove character." *United States v. Miller*, 895 F.2d 1431, 1436 (D.C. Cir. 1990) (emphasis in original).

To determine whether Rule 404(b) evidence is permissible, the first step is ascertaining whether "the evidence [is] probative of some material issue [in the case] other than character." *United States v. Clarke*, 24 F.3d 257, 264 (D.C. Cir. 1994); *see also* FED. R. EVID. 404(b)(2).

Rule 404(b)(2) provides examples that are "not an exclusive list of permissible purposes . . . so long as the evidence is not offered solely to prove character or criminal propensity." *United States v. Sutton*, 636 F. Supp. 3d 179, 201 (D.D.C. 2022); *Miller*, 895 F.3d at 1435 (noting that the list identified in Rule 404(b)(2) of proper purposes for introducing evidence of prior crimes, wrongs, or acts is "not 'exhaustive, but merely illustrative'" (quoting *United States v. Moore*, 732 F.2d 983, 987 n.31 (D.C. Cir. 1984)).  As this Rule makes clear such evidence "may be admissible for . . . purpose[s], such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  FED. R. EVID. 404(b)(2).

Evidence admissible under Rule 404(b) must still clear a second step.  As the D.C. Circuit has instructed, "other crimes and bad acts evidence properly admitted as relevant pursuant to Rule 404(b) may nonetheless be inadmissible [under Rule 403] because its 'probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'"  *United States v. Brown*, 597 F.3d 399, 406 (D.C. Cir. 2010) (quoting FED. R. EVID. 403).  Rule 403, however, "does not bar powerful, or even prejudicial evidence. Instead, the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." *United States v. Pettiford*, 517 F.3d 584, 590 (D.C. Cir. 2008) (internal quotation marks omitted) (emphasis and brackets in original) (quoting *United States v. Gartmon*, 146 F.3d 1015, 1021 (D.C. Cir. 1998)).  In undertaking the Rule 403 analysis, the district court must "take account of the full evidentiary context of the case as the court understands it when the ruling must be made."  *Old Chief v. United States*, 519 U.S. 172, 182 (1997).  Given the trial court's familiarity with this full evidentiary context, district judges generally have "broad discretion to weigh the

extent of potential prejudice against the probative force of relevant evidence." *Athridge v. Aetna Cas. & Sur. Co.*, 604 F.3d 625, 633 (D.C. Cir. 2010) (quoting *Fredrick v. District of Columbia*, 254 F.3d 156, 159 (D.C. Cir. 2001)).

In sum, "[t]his two-step analysis—certification of a 'proper' and relevant purpose under Rule 404(b), followed by the weighing of probity and prejudice under Rule 403—is firmly rooted in the law of this circuit." *Miller*, 895 F.2d at 1435.

### B.    Defendant's Evasion of Law Enforcement

The government seeks to introduce evidence regarding defendant's efforts on three occasions on March 7, 2024, to avoid being stopped by law enforcement after his alleged discarding of the cardboard box and GPS device, starting at about 12:37 p.m. that day and the property damage he caused while fleeing.  In the government's view, this evidence is either intrinsic to the crime charged because his efforts to avoid law enforcement "prolong[ed] [his] possession of the controlled substances," Gov't's Consol. Mot. at 21, or is evidence of other crimes, acts, or wrongs otherwise admissible under Rule 404(b) to show "the defendant's identity as the person who picked up the package, his lack of mistake or accident in possessing the package, and his knowledge that the package contained contraband," *id.* at 22.  Defendant disputes that his flights were intrinsic to the charged offense because during the flight "there were many opportunities in which [defendant] may very well have discarded the sham material prior to the very first flight from officers," rendering the evidence "ambiguous" or otherwise barred as unduly prejudicial.  Def.'s 2d Opp'n at 2, 9.

The parties expend much ink debating on which side of the intrinsic-extrinsic line the proffered flight evidence falls.  *See, e.g.,* Gov't's Consol Mot. at 16-17, 19; Gov't's 404(b) Mot. at 4-5; Def.'s Opp'n at 3-5; Def.'s 2d Opp'n at 1, 5-8.  Yet, given that the D.C. Circuit has

"expressed [its] dissatisfaction with the extrinsic-intrinsic distinction," *United States v. Alexander*, 331 F.3d 116, 126 (D.C. Cir. 2003), and only recognized a "narrow range of circumstances" for evidence to qualify as "'intrinsic to' the charged crime," *Bowie*, 232 F.3d at 929, the proffered evidence is assumed here to be extrinsic because the proffered evidence is properly admissible for non-propensity purposes under Rule 404(b) and not barred by Rule 403. *See United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 181 (D.D.C. 2015) ("[S]ince this other crimes evidence is otherwise admissible under Rule 404(b), the Court need not further delineate between the evidence that is only admissible as intrinsic to the alleged conspiracy and extrinsic evidence that is admissible for a permitted purpose under Rule 404(b)."); *Est. of Gaither v. District of Columbia*, No. 03-cv-1458 (CKK), 2013 WL 12320411, at *4 n.5 (D.D.C. Jan. 25, 2013) ("[T]he Court need not, and in the interest of judicial economy, shall not, resolve this question" of whether the evidence is intrinsic or extrinsic "because admission of the eivdence, under either analysis, requires the same findings that the evidence is relevant and substantially more probative than unfairly prejudicial.").

The government argues that the evidence is admissible under Rule 404(b) to show the defendant's identity as the person who picked up the package, his lack of mistake or accident in possessing the package, his knowledge that the package contained contraband, and his consciousness of guilt. Gov't Consol. Mot. at 22. Each of these particular uses of defendant's actions in evading law enforcement are appropriate. First, while the D.C. Circuit has articulated a "concern with a jury charge that allows it to use Rule 404(b) evidence for identity if the case presents no identity dispute," *United States v. Benton*, 98 F.4th 1119, 1131 (D.C. Cir. 2024), here, defendant has put the government on notice, given the lack of his fingerprint evidence on the package, that he may argue that he "was not the individual who retrieved the package,"

14

Gov't's Reply at 10.  Therefore, the flight evidence may be properly offered "to prove identity." *United States v. Pindell*, 336 F.3d 1049, 1057 (D.C. Cir. 2003).

Second, "[t]he D.C. Circuit has consistently allowed the admission of other crimes[,] [wrongs, or acts] evidence relating to possession of drugs and firearms under Rule 404(b) to demonstrate knowing possession and absence of mistake." *United States v. Williams*, 507 F. Supp. 3d 181, 191 (D.D.C. 2020) (collecting cases).  Defendant "denie[s] knowledge of how these drugs were imported from overseas and maintained that he was only getting paid by someone to retrieve the package."  Gov't's Opp'n to Def.'s Mot. to Suppress at 2, ECF No. 38; *id.* at 3 (noting that during an interview conducted after receiving his Miranda rights, "defendant maintained that he was paid to pick up the package and denied knowledge of or involvement with importing the synthetic drugs from China").  Accordingly, the flight from law enforcement on three occasions, and doing so in a way that caused property damage in the process, is probative of defendant's knowledge of what was in the package, his intent and motive in picking up the package, and the lack of mistake in retrieving the package.

Third, "[c]onsciousness of guilt is a recognized permissible use for evidence under Rule 404(b)."  *United States v. Abu Khatallah*, No. 14-cr-141 (CRC), 2017 WL 11493960, at *5 (D.D.C. Sep. 7, 2017).  Flight from law enforcement "is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."  *Illinois v. Wardlow*, 528 U.S. 119, 124 (2000).  Here, defendant's three attempts to avoid being stopped by law enforcement after discarding the cardboard box and tracker, are highly probative of his consciousness of guilt.  *See United States v. Morrow*, No. 04-cr-355 (CKK), 2005 WL 3159572, at *28 (D.D.C. Apr. 7, 2005) (admitting evidence of defendant's flight from law enforcement "because it goes to show . . . consciousness of guilt relating to the underlying offense"); *cf. United States v. Johnson*, 46

F.3d 1166, 1171 (D.C. Cir. 1995) (noting that evidence of defendant's false statement of employment was properly admitted under Rule 404(b) because it reflected consciousness of guilt and not that defendant had a bad character).

The evidence also clears Rule 403's requirement that the probative value of the evidence is not substantially outweighed by unfair prejudice.  Defendant argues that the evidence is not sufficiently probative because "prior to the very first flight from officers" "there were many opportunities in which [defendant] may very well have discarded the sham material."  Def.'s 2d Opp'n at 2.  Further, "in the lead up to the first time law enforcement sought to stop the vehicle, [defendant] did not know it was law enforcement who was following him and who tried to stop him."  *Id.* at 3.  To support this proposition, defendant argues that "he said as much in his statement to law enforcement on the day of his arrest" when stating that "I didn't know who y'all was, I just seen tinted out cars pulling out in front of me" and explained "I didn't know . . . until I started pulling off.  Once I pulled off, y'all had the lights."  *Id.*[8]  Thus, in defendant's view, the evidence of his first flight occurred under "ambiguous" circumstances.  Def.'s 2d Opp'n at 1-5. With respect to the second and third flights, he argues that he "had purposes unrelated to the

---

[8]         Defendant's response to the government's multiple filings to admit evidence of his flight(s) from law enforcement on March 7, 2024, relies on his own post-arrest, self-exculpatory statements to law enforcement officers, warranting a prudent caution against a defense effort to elicit from testifying officers on cross-examination these same statements.  *See* Def.'s 2d Opp'n at 3 (defendant's statement quoted in text).  Such a defense effort would be objectionable hearsay.  While defendant's self-inculpatory statements, when offered by the government, are admissions by a party-opponent and therefore not hearsay, *see* FED. R. EVID. 801(d)(2), defendant's self-exculpatory statements are inadmissible hearsay when elicited by defendant.  *See* Charles Alan Wright & Jeffrey Bellin, *30B* Fed. Practice & Procedure, Evidence § 6772 ("Qualifying statements can only be 'offered against' the party who uttered them.  This prevents, among other things, criminal defendants from introducing their own exculpatory statement under the rule in lieu of live testimony to the same effect."); *see also United States v. Yousef*, 327 F.3d 56, 153 (2d Cir. 2003) ("When the defendant seeks to introduce his own prior statement for the truth of the matter asserted, it is hearsay, and it is not admissible." (quoting *United States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982)); *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996) (finding no abuse of discretion to deny permission to defense counsel to cross-examine an FBI agent concerning exculpatory statements the defendant made during an interview because the defendant's self-serving statements were hearsay and inadmissible as statements by a party opponent).  A defendant is generally not permitted to place his exculpatory statements "before the jury without subjecting [himself] to cross-examination, precisely what the hearsay rule forbids."  *United States v. Fernandez*, 839 F.2d 639, 640 (9th Cir. 1988) (per curiam).

charge in this case to avoid apprehension," specifically the property damage he caused during the first and second flights respectively.  *Id.* at 4-5.

Contrary to defendant's arguments, the probative value of defendant's flight is weighty, given that he allegedly engaged in this conduct vigorously and dangerously, causing concomitant property damage, shortly after he allegedly retrieved the package and discarded the cardboard box that contained the GPS tracking device.  *Cf. United States v. Bell*, 795 F.3d 88, 100 (D.C. Cir. 2015) (noting that the events at issue "occurred relatively close in time to the conduct charged in the indictment, thereby increasing the probative value of the 404(b) evidence" (quoting *United States v. West*, 22 F.3d 586, 597 (5th Cir. 1994)).  That defendant went to such significant lengths to avoid any police interaction on several occasions within roughly an hour of each attempted police stop is probative for the non-propensity purposes discussed above. Further, while defendant describes the evidence as "highly ambiguous as to whether [defendant] possessed the substance at the time of any of the flights," Def.'s 2d Opp'n at 8, this contention goes to the weight of the evidence for the jury to evaluate and not its admissibility.  Thus, defendant may make his argument that "it is a matter of common knowledge that men who are entirely innocent do sometimes fly from the scene of a crime," Def.'s 2d Opp'n at 9 (quoting *United States v. Hall*, 525 F.2d 857, 862 (D.C. Cir. 1976)), and other arguments as to innocent explanations for his behavior to the jury.

The proffered evidence of defendant's flight from law enforcement is not substantially outweighed by unfair prejudice.  Defendant contends that his evasive actions on March 7, 2024, and the resulting property damage "will inflame a jury," Def.'s 2d Opp'n at 10, but this conclusory argument is not persuasive as likely to cause jurors to rely "on biases, dislikes, or the emotional impact of the evidence,"  *United States v. Straker*, 800 F.3d 570, 589 (D.C. Cir. 2015).

Nothing about the flight evidence, either in the form of photos, testimony, text messages, or jail calls, is tinged with emotion or unfair biases, and, rather, as the government argues, no evidence of personal injuries or severe property damage is involved.  Gov't's Consol. Mot. at 23 ("It is hard to fathom that a jury would be inflamed by the images of the minor scratch on the agent's vehicle and the Camry's bumper and other minor debris from impact with the minivan.").

Further, while neither party raised any potential prejudice of introducing defendant's phone calls with incarcerated individuals—*i.e.*, the risk that his association with individuals who have been convicted, or are accused, of committing crimes suggests that he is more likely to commit crimes—the probative value is not substantially outweighed by unfair prejudice.  As to prejudice, defendant is not the incarcerated person on the call but the person being called by and merely accepting the call from the inmate.  In this circumstance, nothing about the call set-up suggests defendant has a prior criminal record.  Moreover, the government only seeks to introduce short bites of relevant conversation from only three calls with two BOP inmates, and the conversations do not contain any inflammatory content.  Gov't's Exhibit List at D5, D9, D10. Thus, evidence of defendant's evasions from law enforcement shall be admitted for non-propensity purposes.  *See Pettiford*, 517 F.3d at 590 ("Rule 403 does not bar powerful, or even prejudicial evidence.  Instead, the Rule focuses on the danger of *unfair* prejudice, and gives the court discretion to exclude evidence only if that danger *substantially* outweigh[s] the evidence's probative value." (internal quotation marks omitted) (emphasis and brackets in original) (quoting *Gartman*, 146 F.3d at 1021)).[9]

---

[9]    Defendant argues in passing that admission of the flight evidence would "amount to 'mini-trials,' adding significant delay and waste of time, and create a 'sideshow sending the trial off track.'"  Def.'s 2d Opp'n at 10 (quoting *United States v. Bigesby*, 685 F.3d 1060, 1065 (D.C. Cir. 2013)).  Defendant offers no argument as to why or how admitting this evidence will have such an effect, especially given the probative value of the evidence.  As such, the evidence is not likely to add significant time to, nor distract from the issues for the jury to resolve at, trial.

### C.      Prior and Later Boot Possession and Distribution

In addition to the jail calls recording defendant discussing boot on March 13, 2024,

March 14, 2024, and April 3, 2024, the government's investigation of defendant's three seized

phones revealed evidence of defendant's possession and distribution of boot, marijuana, cocaine,

and firearms beginning in August of 2023.  *See* Gov't's Consol. Mot. at 23, 27, 27 nn.5-6;

Gov't's Reply at 10-11.  The investigation also recovered a scale that field tested positive for

boot and cocaine residue from defendant's car pursuant to a search warrant on April 10, 2024.

*Id.* at 16.  From this reservoir of evidence, the government seeks only to introduce (1) jail calls

discussing boot; (2) text messages from January 1, 2024, to April 10, 2024, of defendant's boot

possession and distribution; and (3) that the scale recovered on April 10, 2024, field tested

positive for boot.  Gov't's Consol. Mot. at 12-16, 27; Gov't's Reply at 10-11.  The government

submits that defendant's repeated involvement with discussing and distributing boot, as shown

through the jail calls, scale, and text "messages where he is naming a price and coordinating a

location and time for meetup" both prior to and after the controlled delivery "is evidence of his

intent to distribute boot and knowledge he was possessing boot on the date of the charged

offense."  Gov't's Consol. Mot. at 25; *Id.* at 1.[10]

Evidence of defendant's prior and later boot possession and distribution and the

recovered scale are admissible "because the prior [other act] evidence makes it more probable

that [defendant] knew that he possessed [controlled substances] on" the day of his arrest "and

that he intended to distribute it," making "the evidence . . . relevant to non-propensity purposes."

---

[10]      As support for this statement, the government essentially provides no support in the helpful form of
citations to specific text messages, either by referencing specific exhibits on the government's exhibit list or to
specific pages of the Compilation of Messages.  Based on the Court's review of the Compilation of Messages and
the government's exhibit list, the government is presumed to be referring to the thirty-eight text messages identified
*supra* note 4 related.

*United States v. Douglas*, 482 F.3d 591, 600 (D.C. Cir. 2007); *Pettiford*, 517 F.3d at 590 (holding that evidence of a prior conviction for distribution of cocaine from a defendant's car "made it substantially more likely that [the defendant] knew that there was (and intended that there be) crack in the console of [his car]"). Here, defendant's various messages prior to the March 7, 2024, controlled delivery advertising boot for sale, naming prices, and coordinating location and time for meetups is evidence that he had "hands-on experience in the drug trade" and that "he knew how to get drugs, what they looked like, where to sell them, and so forth." *United States v. Crowder*, 141 F.3d 1202, 1208 n.5 (D.C. Cir. 1998); *see* Compilation of Messages at 9-10, 20-32, 34-35, 44-47; Gov't's Exhibit List at H2.6-H2.7, H2.12-H2.21, H2.23. In other words, the messages are "'not only relevant' but also 'highly probative' of," *United States v. Thorne*, No. 18-cr-389 (BAH), 2020 WL 122985, at *11 (D.D.C. Jan. 10, 2020) (quoting *United States v. McCarson*, 527 F.3d 170, 174 (D.C. Cir. 2008)), his "knowledge and intent with regard to the crime charged," *Cassell*, 292 F.3d at 793 (quoting *United States v. King*, 254 F.3d 1098, 1100 (D.C. Cir. 2001)).

One particularly significant message prior to the controlled delivery shows defendant sending to an individual, on January 18, 2024, the text "66 58th St SE, Washington D.C.," Gov't's Exhibit List at H2.4-H2.5; Compilation of Messages at 7-8, which is the same address used on the package of boot defendant retrieved on March 7, 2024, Gov't's Consol. Mot. at 2. The government offers this "as evidence of his knowledge of this specific address." Gov't's Consol. Mot. at 12. The probative value that defendant had knowledge of, and was the source sending to another person, the address where he later retrieved the package originally containing 10 kilograms of boot but for the controlled delivery, is significant, and "Rule 403 'does not bar powerful, or even 'prejudicial' evidence. Instead, the Rule focuses on the 'danger of unfair

prejudice.'" *Pettiford*, 517 F.3d at 590 (emphasis in original) (quoting *Gartmon*, 146 F.3d at 1021). The highly probative value of this text message is not substantially outweighed by unfair prejudice and the defendant does not argue otherwise. *See generally* Def.'s 2d Opp'n.

The same is true regarding the scale recovered, jail calls, and messages sent after the March 7, 2024, date of the controlled delivery. The recorded conversations reveal his knowledge that he received "fake shit" and needing to make up money that he consequently owes. Gov't's Consol. Mot. at 12-16; Gov't's Exhibit List at D6, D7, D8. Further, defendant's messages to multiple people stating he had a new phone number and boot to sell a week after attempting to retrieve ten kilograms of boot, Gov't's Exhibit List at H.3.3-H3.14, H3.16-H3.17, his messages, between March 14, 2024, and April 6, 2024, showing defendant discussing boot, *id.* at H1.5, H2.11, H3.3-3.4, scheduling sales of boot, H2.21-2.22, H3.8, and sending images of him holding boot he sought to sell, *id.* at H3.5-H3.5c, as well as the scale recovered from his car on April 10, 2024, containing boot residue are all probative that he knew the package he retrieved contained boot and that he intended to sell it. *See also* Compilation of Messages at 4, 11, 16-19, 32, 34-35, 42-47, and 51-69. The proffered messages and jail calls occurred within 30 days of the charged offense, and the scale was recovered slightly more than one month after the controlled delivery, rendering the evidence sufficiently close in time to demonstrate defendant's knowledge and intent to distribute boot. *See United States v. Latney*, 108 F.3d 1446, 1450 (D.C. Cir. 1997) (holding, under Rule 404(b), that admission of an eight-month gap between charged conduct and subsequent drug possession was appropriate because while "the more distant the time between two events the less likely the events are connected," "[s]o long as the evidence makes a fact of consequence more or less likely, it is relevant"); *United States v. Watson*, 894 F.2d 1345, 1349

(D.C. Cir. 1990) (holding that a three-month gap between the charged conduct and a subsequent sale of cocaine satisfied Rule 404(b)'s probative requirements ).[11]

The thrust of defendant's counter argument that the evidence's "only purpose is to show" that defendant "acted in conformity" with the charged conduct is incorrect.  Def.'s Opp'n at 8; Def.'s 2d Opp'n at 11 ("[Defendant] incorporates all previous arguments put forth in his original response to the government's 404(b) notices rather than repeat them all here.").  Here, evidence that, prior to the controlled delivery on March 7, 2024, and his arrest on April 10, 2024, defendant possessed and distributed boot is probative of his knowledge that the package he retrieved would in fact contain boot, undermining any claim that he did not know what was in the package before his retrieval, and that he had the specific intent to distribute it, as opposed to handing it off to someone else.  *See Cassell*, 292 F.3d at 793 ("[I]n cases where a defendant is charged with unlawful possession of something, evidence that he possessed the same or similar things at other times is often quite relevant to his knowledge and intent with regard to the crime charged." (quoting *King*, 254 F.3d at 1100)); *Douglas*, 482 F.3d at 597 ("The elements of the charged crime, . . . made both intent and knowledge matters of consequence to [defendant's] case.  'Intent and knowledge are also well-established non-propensity purposes for admitting evidence of prior crimes or acts.'" (quoting *Bowie*, 232 F.3d at 930)).  Additionally, with respect to the scale, defendant strains to undermine its probative value, arguing that people other than defendant had access to the Mercedes, *see* Def.'s 2d Opp'n at 12, even though the scale was found in defendant's car the same morning of defendant's arrest when the car was parked outside

---

[11]  Though neither party raised any potential prejudice from the jail calls about boot trafficking, as with the jail calls regarding his flight on March 7, 2024, the government only seeks to introduce short portions from three calls, none of which have inflammatory content relative to the charged conduct, *see* Gov't's Consol. Mot. at 12-16, and thus for the same reason applied to the jail calls regarding his flight, these calls pass muster under both Rules 404(b) and 403.

his residence, *see* Gov't's Reply at 12.  As the government submits, that "someone else may

have driven his Mercedes goes to weight and not admissibility" of this evidence.  *Id.*

     In sum, the government's proffered evidence of prior drug possession and distribution

acts that involve "similar drugs to the present case, similar storage methods, and the like" has

significant probative value regarding "intent, preparation, plan, knowledge, . . . absence of

mistake, [and] lack of accident—all of which are permissible, noncharacter purposes for the

[Rule 404(b)] evidence."  *United States v. Moore*, 75 F. Supp. 3d 444, 451 (D.D.C. 2014)

(ellipsis and first alteration in original) (citations omitted).[12]

     The probative value of this evidence is not substantially outweighed by unfair prejudice.

As the D.C. Circuit has acknowledged, "the admission of prior possession-with-intent-to-

distribute evidence almost unavoidably raises the danger that the jury will improperly conclude

that because the defendant committed some other crime, he must have committed the one

charged in the indictment."  *Pettiford*, 517 F.3d at 590 (alteration in original) (citation and

internal quotation marks omitted).  "But [t]his danger . . . cannot give rise to a *per se* rule of

exclusion."  *Id.* (citation and internal quotation marks omitted).  Defendant does not point to any

"compelling or unique evidence of prejudice in this case," warranting exclusion of the evidence

of defendant's prior possession and distribution of boot.  *Douglas*, 482 F.3d at 601 (quoting

*United States v. Burch*, 156 F.3d 1315, 1324 (D.C. Cir. 1985)); *see* Def.'s Opp'n at 8-10.  To the

---

[12]    Relying on *United States v. Manner*, 887 F.2d 317 (D.C. Cir. 1989), defendant argues that "even where
there is probative value to other bad acts, such evidence can end up causing a jury to credit and bolster otherwise
weak evidence and in essence use it improperly in deciding guilt on the charged offense," posing the same risk here
if the proffered boot trafficking evidence is admitted.  Def.'s 2d Opp'n at 11.  Defendant overreads *Manner*.  In
*Manner*, the D.C. Circuit determined that the district judge's admission of evidence of a drug sale that occurred ten
weeks after the charged conduct was proper under Rule 404(b), but that the requisite Rule 403 balancing was not
readily apparent on the record despite the defendant's objection under that rule.  887 F.3d at 322-23.  The Circuit
remanded for the district court to "articulate[]" "some . . . balancing of the evidence's probative value and
prejudicial effect."  *Id.* at 323.  As described *supra*, the probative value of this evidence is not substantially
outweighed by unfair prejudice.

contrary, the text messages are not extensive nor emotionally charged, and the government has also taken additional steps to minimize any unfair prejudice by omitting lengthy messages about coconspirators, redacting references to drugs other than boot in messages, redacting references to firearms in messages, and providing testimony that the digital scale tested positive for boot, without mentioning the scale also tested positive for cocaine.  Gov't Consol. Mot. at 27; Gov't's Reply at 12.

On a similar note, to "guard[] against the jury's reliance on impermissible inference that might . . . be[] drawn from the Rule 404(b) evidence," *Brown*, 597 F.3d at 400, defendant may seek a limiting jury instruction "to ensure that the jury considers this evidence 'only for its proper purpose,'" *Mosquera-Murillo*, 153 F. Supp. 3d at 186.  *See also Bell*, 795 F.3d at 100 ("Moreover, the district court issued limiting instructions to mitigate the danger of undue prejudice or improper inferences. There is nothing to suggest the jury ignored the court's instructions.").

## III.    CONCLUSION AND ORDER

For the foregoing reasons, it is hereby—

**ORDERED** that the government's Consolidated Motion to Admit Rule 404(b) Evidence is **GRANTED** as to law enforcement agent testimony, photographs, recorded jail calls between defendant and inmates at BOP facilities, and text message chains as evidence of defendant's flight from law enforcement on March 7, 2024, and jail calls, text messages reflected in the Government's Exhibit List, ECF No. 65, at H1.1 through H1.5, H1.7, H2.1 through H2.8, H2.11 through H2.24, H3.1, H3.3 through H3.14 and H3.16 through H3.17, and the scale recovered on April 10, 2024, from the 2023 Mercedes sedan; it is further

**ORDERED** that the government's Consolidated Motion to Admit Rule 404(b) Evidence is otherwise **DENIED**; it is further

**ORDERED** that the government's Motion for 404(b) Evidence, ECF No. 27 is **DENIED AS MOOT**; and it is further

**ORDERED** that the government's Supplement Motion for 404(b) Evidence, ECF No. 36, is **DENIED AS MOOT**.

Date: July 10, 2025

_____

**BERYL A. HOWELL**
United States District Judge